(98 App. Div. 222)

FLEMING v. TUTTLE et al.

(Supreme Court, Appellate Division, Second Department. November 18, 1904.)

1. INJURY TO SERVANT—LIABILITY OF MASTER FOR NEGLIGENCE OF FOREMAN.
   Where one of the defendants, who was yard foreman, directed plaintiff, an employé, to go to the mouth of a coal chute, which was clogged, and dislodge the coal, promising to take charge of the gate above so as to prevent a flow of coal down on plaintiff while so at work, defendants are liable for injuries to plaintiff resulting from the failure of such defendant to attend the gate.

2. PERSONAL INJURIES—PLEADING—SCOPE OF COMPLAINT.
   The allegation in the complaint of "injuries to the head" is broad enough to admit evidence that the injury received caused pressure on and injury to the brain.

Appeal from Trial Term, Kings County.

Action for personal injuries by Peter Fleming against Ezra B. Tuttle and others, composing the firm of S. Tuttle, Sons & Co. From a judgment for plaintiff and an order denying a motion for a new trial on the minutes, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Lewis H. Freedman (John Notman, on the brief), for appellants.
Edmund C. Viemeister, for respondent.

WOODWARD, J. The plaintiff was employed in a coal yard owned and operated by the defendants. A new apparatus for elevating and distributing coal about the yards had been installed about six weeks prior to the accident, resulting in personal injuries to the plaintiff, and, although several allegations of negligence were made in the complaint, only one question as to the defendants' negligence was submitted to the jury. It appears by the plaintiff's testimony (which was the version accepted by the jury) that the coal, which was elevated to a hopper, and from thence passed down through a chute about 35 feet long to small cars, had become clogged in this chute. The plaintiff, who was in charge of the operation of the chute, tried several methods of dislodging the coal, but could not make it run. He says that he met Mr. Day, one of the defendants, who was the superintendent of the yards, and told him of the difficulty, and asked for an assistant. Thereupon Day directed the plaintiff to go to the foot of the chute, and to take a stick and insert it in the mouth of the same for the purpose of loosening up the coal, at the same time promising on his part to take charge of the gate which controlled the flow of coal in such a manner as to prevent the same from flowing down upon the plaintiff. Acting under these directions, the plaintiff went to the foot of the chute, stirred up the coal with a stick, and was about to climb out of the car, which was to receive the coal, when the coal came down with a rush, upset the car, and threw the plaintiff to the ground, some 18 or 20 feet below, where the coal continued to flow down upon him, producing the injuries complained of here. Day denies that he had any conversation with the plaintiff on this occasion, and says, "I don't know that I ever attended to a gate in that hopper at all;" so that it is conceded on the part of the defendants that they did not, through Mr. Day, give the plaintiff any protection by controlling the gate, as the latter says Day promised to do. We think, under the circumstances, that the defendants owed the plaintiff the duty of protecting him while he was engaged in clearing the chute of the clog—a thing that might have been done by operating the gates provided for that purpose, but which could not be closed during the time that the coal remained clogged in the channel. We are also of the opinion that the plaintiff is not to be charged with contributory negligence in going into the car and following the directions of the yard foreman, who was one of the members of the firm employing him. The work might have been done in entire safety if Day had performed his agreement and operated the gates in the chute when the coal began moving, and the plaintiff had a right to rely upon this promise.

We find no error in the rulings of the learned trial court. The pleadings alleged injuries to the "head, body, and limbs and permanently injured," and it was competent to show by physicians that the injury received caused pressure upon and injury to the brain. An injury to the head is broad enough to admit of evidence of an injury through the head to the brain, where the result is traced directly to the injury; this being quite different from those cases

in which a severe nervous shock is alleged, and an effort is made to show that as a result of such shock heart disease, vertigo, curvature of the spine, and other diseases have resulted. Kleiner v. Third Avenue R. R. Co., 162 N. Y. 193, 201, 56 N. E. 497.

The judgment and order appealed from should be affirmed, with costs. All concur.